IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J.B. HUNT TRANSPORT, INC.                                              **PLAINTIFF**

**V.**                                    **CASE NO. 5:20-CV-5049**

STEADFAST INSURANCE COMPANY; and
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO AUTO TERROR AND MALICIOUS
ATTACK PROTECT CONTINGENT INSURANCE
POLICY NO. TE1800238                                              **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Certain Underwriters at Lloyd's London subscribing to Auto Terror and Malicious Attack Protect Contingent Insurance Policy No. TE1800238 ("Underwriters") have filed a Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Litigation Pending Arbitration. (Doc. 15). Plaintiff J.B. Hunt Transport, Inc. ("J.B. Hunt") and Defendant Steadfast Insurance Company ("Steadfast") have filed responses in opposition. (Docs. 23 & 25). Underwriters replied. (Doc. 37). For the reasons discussed below, the Court finds that J.B. Hunt's claims against Underwriters should be referred to arbitration and therefore **GRANTS** the Motion to Compel Arbitration (Doc. 15). The Court **STAYS** the remaining claims against Steadfast until the conclusion of arbitration.

Furthermore, J.B. Hunt has filed a Motion to Strike Underwriters' Answer to the Amended Complaint (Doc. 44), to which Underwriters have responded. (Doc. 47). For the reasons discussed below, the Court **DENIES** the Motion to Strike (Doc. 44).

Finally, J.B. Hunt filed a Motion for Leave to File a Second Amended Complaint (Doc. 41), Underwriters responded (Doc. 50), and J.B. Hunt replied (Doc. 58). For the reasons discussed below, this Motion is **DENIED**.

## I.  BACKGROUND

This dispute arises from two insurance policies issued to J.B. Hunt by separate defendants Underwriters and Steadfast.  In its Amended Complaint, J.B. Hunt alleges that Underwriters and Steadfast are liable for breach of duty to defend and indemnify J.B. Hunt for claims presented in a separate suit involving the wrongful death of Evelyn S. Udell ("Udell Suit").  (Doc. 8, p. 1–2).  The Udell Suit arose from the alleged intentional killing of Evelyn S. Udell by an employee for XM Carriers, a contracted carrier for J.B. Hunt.  The Udell Suit has resulted in a confidential settlement agreement.  (Doc. 15-1, p. 2).  J.B. Hunt alleges that the claims in the Udell Suit are covered under the insurance policies issued by Underwriters and Steadfast but that Underwriters and Steadfast refused to defend those claims and have refused to "remit the sums owed under the aforementioned policies."  (Doc. 8, p. 2).  For Underwriters' part, they argue that they remain willing to participate in a good faith settlement of the Udell Suit but allege that they are not liable for a voluntarily overvalued settlement offer made without the consent of Underwriters and Steadfast.  (Doc. 15-1, p. 3).

The policy issued by Underwriters, Underwriters policy No. TE11800238 (the "Policy"), provided certain auto terror and malicious attack excess insurance coverage to J.B. Hunt from December 31, 2018 through December 31, 2019.  (Doc. 59-1, p. 57). Subsection 7.6 of the Policy, entitled "Arbitration," states:

> Any dispute, controversy, or claim arising out of or relating to this contract, including the formation, interpretation, breach or termination thereof, including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS International Arbitration Rules. The tribunal will consist of three arbitrators. The place of arbitration will be New York . . . . Judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof.  The law of this contract shall be the law of New York.

*Id.* at 71 (emphasis added)).   Subsection 7.6 of the Policy will be referred to as the "Arbitration Provision."   Somewhat confusingly, the Policy also includes language indicating that Arkansas law governs. *Id.* at 57.

In their Motion to Compel Arbitration, Underwriters allege that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), as implemented through Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, is controlling law under the Supremacy Clause. (Doc. 15, p. 2 ¶ 3).  According to Underwriters, pursuant to the Convention and Chapter II of the FAA, the Arbitration Provision is valid and enforceable. *Id.*  J.B. Hunt responds that Arkansas state law—which bars the use of arbitration provisions in insurance contracts—renders the Arbitration Provision unenforceable.  J.B. Hunt also argues that it is not a party to the Arbitration Provision and that Underwriters have waived their right to enforce the Arbitration Provision. (Doc. 24, pp. 1–10).  For Steadfast's part, it argues that it is not subject to the Arbitration Provision and, in the event the Court does compel arbitration between J.B. Hunt and Underwriters, it asks that the claims against it be stayed until the arbitration is concluded. (Doc. 25, p. 2).

On May 22, 2020, after the Motion to Compel Arbitration became ripe, J.B. Hunt filed a Motion for Leave to File a Second Amended Complaint. (Doc. 41).  In its proposed second amended complaint, J.B. Hunt seeks to add separate counts for breach of contract and bad faith. *Id.* at 2.  J.B. Hunt also alleges that it has not yet received "a true and correct copy" of the Policy. *Id.* at 1.  Furthermore, on May 29, 2020, J.B. Hunt filed a Motion to Strike Underwriters' Answer to the Amended Complaint. (Doc. 44).

3

On June 8, 2020, the Court held a case management hearing with the parties and took the pending motions under consideration. At the hearing, the Court ordered J.B. Hunt and Underwriters to meet and confer in the hope that they could agree on the true and correct form of the Policy in effect at the time of Ms. Udell's death. On June 19, 2020, J.B. Hunt and Underwriters filed a stipulation and agreed that the copy of the Policy attached to that stipulation is a true and correct copy of the Policy in effect at the time of the incident (Docs. 59 & 59-1).

## II. DISCUSSION

### A. J.B. Hunt's Motion To Strike Underwriters' Answer to the Amended Complaint

The Court will first address J.B. Hunt's Motion to Strike Underwriters' Answer to the Amended Complaint (Doc. 44). J.B. Hunt contends that the answer (Doc. 42) should be struck because the copy of the Policy attached thereto is "not a true and correct copy of the insurance policy which was in effect on the date of the loss." (Doc. 45, p. 1). As proof of this assertion, J.B. Hunt states that the copies of the Policy attached to its original complaint and amended complaint (Docs. 4-4 & 8-3) are not the same as the copy of the Policy attached to Underwriters' answer. (Doc. 42-1). Underwriters respond that the documents are identical except for "identifying Exhibit 'divider' pages." (Doc. 47, p. 1). The parties appear to have resolved this dispute via their agreed stipulation (Doc. 59).

This Motion—which is likely mooted by the parties' agreed stipulation—is **DENIED**. The copy of the Policy attached to Underwriters' answer is substantively identical to the one attached to the parties' stipulation. The only difference is that the endorsed version of the Policy attached to the agreed stipulation specifically identifies other underlying insurance policies, while the other copies of the Policy did not identify other such

4

insurance policies. *Compare* Doc. 42-1, p. 31 (describing the underlying insurance policies as "To be confirmed"), *with* Doc. 59-1, p. 57 (identifying the underlying insurance policies). There is no dispute regarding the actual language of the Arbitration Provision; that provision is identical in all of the copies of the Policy before the Court. Motions to strike are disfavored, *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000), and J.B. Hunt has presented no basis for the Court to do so here. Accordingly, J.B. Hunt's Motion to Strike is **DENIED**.

### B. Underwriters' Motion to Compel Arbitration

This case involves an arbitration agreement between foreign nationals and United States citizens, and such arbitration agreements are governed by the Convention and its implementing legislation, Chapter II of the FAA. Article II, Section 3 of the Convention provides that "[t]he court of a Contracting State . . . shall, at the request of one of the parties, refer the parties to arbitration . . . ." 1970 WL 104417, at *1 (Dec. 29, 1970). At the same time as the United States' accession to the Convention, Congress amended Chapter II of the FAA so that it now implements the Convention in disputes involving foreign parties or related to a foreign state. 9 U.S.C. §§ 201–208 ("The Convention on the Recognition and Enforcement of Foreign Arbitral awards . . . shall be enforced in United States courts in accordance with this chapter").

Arkansas law bars the enforcement of binding arbitration clauses in insurance contracts. Ark. Code Ann. § 16-108-233(b)(3) ("This subchapter does not apply to . . . [a]n insured or beneficiary under any insurance policy or annuity contract"); Ark. Code Ann. § 23-79-203(a) ("No insurance policy . . . shall contain any condition, provision, or agreement which directly or indirectly deprives the insured . . . the right by trial on any

question of fact arising under the policy . . . .").[1] Typically, the FAA would preempt conflicting state law under the Supremacy Clause, but the McCarran-Ferguson Act creates a system of "reverse-preemption" for state insurance laws. *See United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993). Under the McCarran-Ferguson Act, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Thus, the essential question is whether the Convention and Chapter II of the FAA are "Act[s] of Congress" encompassed by the McCarran-Ferguson Act.[2]

J.B. Hunt argues that the McCarran-Ferguson Act applies here, meaning Arkansas law controls via reverse-preemption. Underwriters respond that the McCarran-Ferguson Act does not apply to the Convention or Chapter II of the FAA and that, as a result, the Court should enforce the Arbitration Provision. The lynchpin of Underwriters' argument is that the Convention and Chapter II of the FAA are not "Act[s] of Congress" subject to the McCarran-Ferguson Act. *See* 15 U.S.C. § 1012(b). In support of this argument, they cite to a variety of cases, all of which conclude, for various reasons, that the McCarran-Ferguson Act does not supersede the Convention or Chapter II of the FAA.

---

[1] J.B. Hunt asserts that Arkansas law governs the Arbitration Provision, even though the Arbitration Provision itself says that it is governed by New York law. However, at the case management hearing, counsel for Underwriters conceded that Arkansas law applies. As Underwriters have conceded that Arkansas law governs the Arbitration Provision, the Court will not further explore the choice-of-law issue.

[2] Courts have held that, under the operation of McCarran-Ferguson Act, Ark. Code Ann. § 16-108-233 reverse preempts Chapter I of the FAA. *See Riceland Foods, Inc. v. Liberty Mut. Ins. Co.*, 2010 WL 3168228, at *4 (E.D. Ark. Aug. 6, 2010) (finding that reverse-preemption occurred where *domestic* insurers were seeking arbitration under the FAA).

6

Below, the Court reviews the conflicting case law on this subject and ultimately concludes that the McCarran-Ferguson Act does not supersede the Convention or Chapter II of the FAA.

### i. Precedents Addressing Whether the Convention Supersedes the McCarran-Ferguson Act

There is no binding precedent in the Eighth Circuit addressing the interplay between the McCarran-Ferguson Act and the Convention or its implementing legislation, Chapter II of the FAA. The Eighth Circuit had the opportunity to address the issue in *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619 (8th Cir. 1997), but decided the case on a separate issue and did not address the merits of the question before this Court. Given the lack of binding case law from the Eighth Circuit, the Court looks to persuasive authorities for guidance.

In support of its reverse-preemption argument, J.B Hunt points to *Stephens v. American International Insurance Co.*, a Second Circuit decision holding that the Convention is non-self-executing (*i.e.*, it does not provide a rule of decision) and that its implementing legislation is an "Act of Congress" that is preempted by state law under the McCarran-Ferguson Act. 66 F.3d 41, 45 (2d Cir. 1995). But the *Stephens v. American International Insurance Co.* decision is in significant tension with a later decision from a separate panel of the Second Circuit, *Stephens v. National Distillers & Chemical Corp.*, where the Second Circuit raised the possibility its precedents require it "to apply federal law to the insurance industry, in spite of the McCarran-Ferguson Act, whenever federal law clearly intends to displace all state laws to the contrary." 69 F.3d 1226, 1233 & n.5–6 (2d Cir. 1995). Thus, the Second Circuit's position is unclear, and the persuasive power

7

of the *Stephens v. American International Insurance Co.* decision is somewhat questionable.

J.B. Hunt also cited a thoroughly-researched opinion from the Eastern District of Missouri, *Foresight Energy, LLC v. Certain London Market Insurance Cos.*, where the district court faced facts analogous to the ones here. 311 F. Supp. 3d 1085, 1100 (E.D. Mo. 2018). There, a domestic entity sought coverage from a foreign insurer, and the insurer removed the dispute to federal court asserting federal question jurisdiction under the FAA. *Id.* at 1088. The district court remanded the case on the basis that Missouri's statute prohibiting arbitration clauses in insurance policies reverse preempted the Convention and Chapter II of the FAA by operation of the McCarran-Ferguson Act. *Id.* at 1101. The district court, agreeing with the Second Circuit's decision in *Stephens v. American International Insurance Co.*, found that the Convention is not self-executing and concluded that Chapter II of the FAA is an "Act of Congress" under the McCarran-Ferguson Act. *Id.*

The Fifth Circuit reached the opposite conclusion in *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 723–24 (5th Cir. 2009) (en banc). There, the Fifth Circuit held that the phrase "Act of Congress" in the McCarran-Ferguson Act does not include treaties and their implementing legislation because Congress did not intend to "permit state law to preempt implemented, non-self-executing treaty provisions but not to preempt self-executing treaty provisions." *Id.* Recently, a panel of the Fifth Circuit favorably cited *Safety National* and agreed with its outcome. *See Safety National McDonnel Group, L.L.C. v. Great Lakes Insurance SE, UK Branch*, 923

8

F.3d 427, 432 (5th Cir. 2019) ("[T]he McCarran-Ferguson Act does not permit state laws to reverse-preempt the Convention.").

The Fourth Circuit reached the same result as the Fifth Circuit but for a different reason. In *ESAB Group., Inc. v. Zurich Insurance PLC*, the Fourth Circuit found that Congress did not intend for the McCarran-Ferguson Act to supersede statutes implementing treaties, *i.e.*, Chapter II of the FAA. 685 F.3d 376, 389 (4th Cir. 2012). This reasoning was based in part on the Supreme Court's holding that the McCarran-Ferguson Act only applies to "implied preemption by domestic commerce legislation." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003). A district court in the Northern District of Illinois agreed with the Fourth Circuit's reasoning, finding that the McCarran-Ferguson Act applied exclusively to domestic commerce relationships and did not reverse-preempt the Convention. *Catalina Holdings (Bermuda) Ltd. v. Hammer*, 378 F. Supp. 3d 687, 694 (N.D. Ill. 2019).

Other district courts have cut the Gordian knot surrounding this issue and concluded that Article II, Section 3 of the Convention itself is self-executing, so it provides a rule of decision not superseded by the McCarran-Ferguson Act because the Convention is not an "Act of Congress." *See CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Ga.*, 2019 WL 7185547, at *5 (W.D. Wa. Dec. 26, 2019); *Martin v. Certain Underwriters of Lloyd's, London*, 2011 WL 13227729, at *6 (C.D. Cal. Sept. 2, 2011). Both of these district courts found that the plain language of Article II, Section 3 of the Convention, which states that "[t]he court of a Contracting State . . . shall . . . refer the parties to arbitration," supports the conclusion that Section 3 is self-executing. Those courts

concluded that because Section 3 is self-executing and not an "Act of Congress," the McCarran-Ferguson Act does not supersede Section 3.

Finally, the Court notes that Judge Barnes in the Western District of Arkansas faced this exact issue in *Murphy Oil USA, Inc. v. SR International Business Insurance Co., Ltd.*, and concluded that the Convention supersedes the McCarran-Ferguson Act. 2007 WL 2752366, at *4 (W.D. Ark. Sept. 20, 2007). In that decision, Judge Barnes noted that the Supreme Court and the Eighth Circuit have repeatedly stated "that international comity is a fundamental principle deserving substantial deference," and he concluded that allowing a state-law defense to render arbitration clauses unenforceable would damage the fabric of international commerce and trade. *Id.*

### ii. The McCarran-Ferguson Act Does Not Permit State Laws to Reverse-Preempt the Convention or Chapter II of the FAA

While there are persuasive arguments on both sides of this question, the Court finds more persuasive the arguments that the McCarran-Ferguson Act does not apply to the Convention or Chapter II of the FAA.

First, the Court agrees with the Fourth Circuit's reasoning in *ESAB Group., Inc.*: "Congress did not intend for the McCarran-Ferguson Act to permit state law to vitiate international agreements entered by the United States." 685 F.3d at 389 (citation omitted). As the Supreme Court has observed, the federal government must be permitted to "speak with one voice when regulating commercial relations with foreign governments. *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976). There is nothing in the text of the McCarran-Ferguson Act that suggests Congress intended to give states the power to nullify international agreements; indeed, the Supreme Court has held that the McCarran-Ferguson Act does not give states the power "to regulate activities carried on beyond

10

[their] own borders." *Garamendi*, 539 U.S. at 428 (quoting *FTC v. Travelers Health Ass'n*, 362 U.S. 293, 300–301 (1960)).  As Judge Barnes noted in *Murphy Oil USA*, "[t]his view is more in line with the New York Convention's intended purpose and the Eighth Circuit's strong language recognizing that 'international comity is a fundamental principle deserving of substantial deference.'"  2007 WL 2752366, at *3 (citing *Goss Int'l Corp v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 360 (8th Cir. 2007)).  While the Court does not disregard the contrary holding from the Second Circuit in *Stephens v. American International Insurance Co.*, that decision was almost immediately called into question in *Stephens v. National Distillers & Chemical Corp.*, where another panel of the Second Circuit observed that the McCarran-Ferguson Act may be limited to domestic commerce.  69 F.3d at 1231 n.5.  After reviewing and considering these precedents, the Court finds that the McCarran-Ferguson Act is limited to domestic affairs, the Convention and Chapter II of the FAA are not within the scope of the McCarran-Ferguson Act, and the Convention and Chapter II of the FAA are not reverse-preempted by Arkansas law barring the enforcement of arbitration agreements in insurance contracts.

Second, the Court also agrees with those courts who have concluded that Article II, Section 3 of the Convention is self-executing based on its plain language directing domestic courts to enforce foreign arbitral agreements.  A treaty is self-executing when it "operates of itself without the aid of any legislative provision."  *Medellin v. Texas*, 552 U.S. 491, 504 (2008) (quoting *Foster v. Neilson*, 27 U.S. 253, 314 (1829)).  Non-self-executing treaties, however, require Congress to enact implementing legislation "before it can become a rule for the Court."  *Foster*, 27 U.S. at 314.  Treaties may "contain both self-

executing and non-self-executing provisions." *Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001).

In *Medellin*, the Supreme Court was asked to determine whether Article 94(1) of the United Nations Charter was self-executing. Article 94(1) states that "[e]ach Member of the United Nations undertakes to comply with the decision of the [ICJ] in any case to which it is a party." 552 U.S. at 508. The Supreme Court concluded that Article 94(1) was not self-executing because it directs signatories to "undertake to comply" with decisions of the ICJ rather than stating that they "shall" or "must" comply with such decisions. The Supreme Court emphasized that "[t]he Article is not a directive to domestic courts, but was instead "a commitment" by the political branches to take future action. *Id.*

Here, however, Article II, Section 3 of the Convention directs that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, *shall*, at the request of one of the parties, refer the parties to arbitration." Convention, Art. II § 3, 1970 WL 104417, at *1 (emphasis added). This is precisely the type of "directive to domestic courts" that was missing in *Medellin*, making Article II, Section 3 of the Convention self-executing. The Court acknowledges that the Supreme Court implied in *Medellin* that the Convention is a non-self-executing treaty, *see* 552 U.S. at 521–22, but that observation was made in *dicta*, and it is unclear whether that observation was directed to the entire Convention or only a part of it. *See Safety Nat. Cas. Corp.*, 587 F.3d at 722 ("This reference in *Medellin* could be read to imply that the Convention in its entirety is not self-executing, although such conclusion cannot be drawn with any certainty from the brief discussion in the Court's opinion."). In fact, the Court agrees with the observation in *CLMS Management*

*Services* that Article II, Section 3 of the Convention may be the *only* self-executing provision of the Convention, as it is the only provision of the Convention that specifically directs the courts of signatory states to refer matters to arbitration. Convention, Art. II § 3, 1970 WL 104417, at *1 ("The *court* of a Contracting State . . . shall . . . refer the parties to arbitration . . . .") (emphasis added). Because Article II, Section 3 of the Convention is self-executing, it is not an "Act of Congress" under the McCarran-Ferguson Act.

For all of these reasons, the Court concludes that Arkansas law does not reverse-preempt the Convention or Chapter II of the FAA. The Convention therefore controls, and the Court next turns to analyze the application of the Convention to the Arbitration Provision.

### iii. Applying the Convention to the Arbitration Provision

Four factors must be considered to determine whether the Convention requires parties to attend arbitration: (1) whether a written arbitration agreement exists between the parties; (2) whether the arbitration provision provides for arbitration in the territory of a signatory of the Convention; (3) whether the relationship between the parties involves a commercial subject matter; and (4) whether the relationship between the parties is not entirely domestic. *See* 9 U.S.C. § 202; *Murphy Oil USA, Inc.*, 2007 WL 2752366, at *4. The second and third requirements for applying the Convention are easily met: The arbitration provision states that arbitration should occur in New York, which is located within a signatory's territory, and the parties' insurer/insured relationship is commercial in nature.

The first element is disputed by J.B. Hunt. J.B. Hunt concedes that the Policy contains the Arbitration Provision but argues that the Arbitration Provision does not apply

to J.B. Hunt.   Instead, J.B. Hunt argues that the Arbitration Provision only applies to disputes between reinsurers.   In support of this argument, J.B. Hunt points out the following:   (1) the Arbitration Provision does not explicitly reference J.B. Hunt; (2) a separate form includes a different arbitration provision governing subscribing insurers; and (3) the Policy contains a service-of-suit clause that requires an insurer to submit to the jurisdiction of a federal district court.

These arguments are not convincing.   First, the Policy is quite obviously an insurance contract between J.B. Hunt and Underwriters. *See generally* Doc. 59-1, pp. 57–80. The Arbitration Provision provides that "[a]ny dispute, controversy or claim arising out of or relating to this contract . . . will be referred to . . . arbitration . . . ." *Id.* at 71.   The reference to "this contract" clearly means the Policy, to which J.B. Hunt is a party, and the present action—which seeks a declaration that Underwriters owe J.B. Hunt coverage under the Policy—unquestionably falls within the scope of the Arbitration Provision.   The other form referenced by J.B. Hunt sets forth arbitration protocols for disputes between subscribing insurers, *see id.* at 21, and is not relevant.   Finally, the service-of-process clause does not undermine or contradict the Arbitration Provision, as it simply provides a judicial forum for a party to the Policy to seek to compel arbitration.   For all of these reasons, the Court finds that the first element required for the application of the Convention is met.

Turning to the fourth element, J.B. Hunt argues that there is no foreign nexus because it acquired the Policy through McGriff Insurance, a "surplus lines broker" in Arkansas, and because Underwriters could not have issued the Policy "absent Arkansas law authorizing the issuance of surplus lines insurance through brokers . . . ." (Doc. 23,

p. 13). Yet Underwriters point out that J.B. Hunt's agents obtained the Policy through the "Lloyd's market in the United Kingdom," (Doc. 16, p. 6) and J.B. Hunt admits in its amended complaint that "Underwriters are entities incorporated and having their principal place of business at 1 Lime Street in London, England . . . ." (Doc. 8, p. 4). Because Underwriters are foreign nationals and because J.B. Hunt would not have been able to secure the Policy without using a foreign insurance market, the Court concludes that the commercial relationship between Underwriters and J.B. Hunt is not entirely domestic.

Since all four elements are satisfied, the Convention, which requires the Court to enforce arbitration agreements, applies to the parties' dispute in this case. J.B. Hunt's claims therefore belong before an arbitration tribunal, per the Arbitration Provision.

### iv. Underwriters Have Not Waived Their Right to Arbitrate

Next, the Court finds that Underwriters have not waived their rights to enforce the Arbitration Provision. A party waives its right to arbitration when the party knew of an existing right to arbitrate but acted inconsistently with that right and through those actions prejudiced the other party. *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007). "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'" *Id.* (quoting *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)). Underwriters have not filed suit, nor have they extensively engaged in the litigation process prior to filing the present Motion to Compel Arbitration. Moreover, J.B. Hunt has not demonstrated any prejudicial effect of compelled arbitration beyond the inability to claim exception under Arkansas law, which this Court has held does not apply

15

to the Policy. For these reasons, the Court finds that Underwriters have not waived their rights to arbitration.

### v. This Action is Stayed

The next question is what to do with the claims before this Court. As to J.B. Hunt's claims against Underwriters, Underwriters request dismissal of the claims pending arbitration. The FAA "generally requires a federal district court to stay an action pending an arbitration, rather than dismiss it." *Green v. SuperShuttle Intern. Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). Seeing no reason to dismiss the claims between J.B. Hunt and Underwriters prior to a final arbitral decision, the Court declines to do so and will instead stay this matter with respect to J.B. Hunt's claims against Underwriters.

Additionally, the Court must determine whether to compel arbitration of J.B. Hunt's claims against Steadfast and, if not, whether to stay this litigation pending the conclusion of arbitration. Arbitration under the FAA, of course, "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986) (quotation omitted). A non-signatory to an arbitration agreement cannot be forced into arbitration unless there is some evidence that the non-signatory consented to arbitration. *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988) (citations omitted) (holding that one who signs "an arbitration agreement as agent for a disclosed principal" cannot be bound personally by the arbitration agreement). While the Arbitration Provision in the Policy is undoubtedly broad, Steadfast was not a party to the Policy and Steadfast is not attempting to enforce the Policy. The parties have not directed the Court to any evidence to show that Steadfast

consented to arbitrate any claims between it and J.B. Hunt.  Accordingly, the Court concludes that there is no basis for compelling arbitration of the claims against Steadfast.

Given that the claims against Steadfast will remain before this Court, the Court must determine whether to stay Steadfast's claims or allow them to proceed normally. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The Eighth Circuit has found that it "makes eminent sense" to stay proceedings involving third parties to an arbitration agreement "when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement." *Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983).  To determine whether to expand a stay to nonarbitrable claims pending the completion of arbitration, courts weigh three factors:  (1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbitrator's decision; and (3) the prejudice that may result from delay. *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir. 2001) (citations omitted).

The Court concludes that the legal and factual issues underlying J.B. Hunt's claims against Steadfast overlap substantially with those underlying the claims against Underwriters.  J.B. Hunt's claims against both Underwriters and Steadfast revolve around whether J.B. Hunt accurately assessed its exposure in the Udell Suit and whether the insurers reasonably withheld their consent to the settlement.  There is no evidence before the Court that J.B. Hunt's claims against Underwriters and Steadfast rely upon different facts.  Indeed, judging from the pleadings and the representations made at the case

17

management hearing, it appears that common questions of fact exist among all claims between J.B. Hunt and its insurers. It is very likely that a ruling from the arbitrator on the dispute between J.B. Hunt and Underwriters will impact the outcome of the litigation between J.B. Hunt and Steadfast, meaning that judicial resources would be best conserved by staying this matter in its entirety. Thus, the Court will stay the entirety of these proceedings pending the results of the arbitration in New York.

### III. CONCLUSION

For the reasons stated herein, IT IS ORDERED THAT the Court **GRANTS** Underwriters' Motion to Compel Arbitration (Doc. 15). The Court **COMPELS** J.B. Hunt and Underwriters to arbitrate the claims between them consistent with the terms of the Arbitration Provision. Additionally, this entire action is **STAYED** pending arbitration. The Clerk of Court is **ORDERED** to administratively close this case until such time as the parties move for judgment to be entered according to the outcome of arbitration proceedings.

It is **FURTHER ORDERED** that J.B. Hunt's Motion to Strike Underwriters' Answer to the Amended Complaint (Doc. 44) is **DENIED**.

It is **FURTHER ORDERED** that J.B. Hunt's Motion for Leave to File Second Amended Complaint (Doc. 41) is **DENIED** as moot.

Finally, the Court orders the parties to submit a joint notice updating the Court on the status of this case every three months beginning on December 31, 2020. The Court further orders the parties to submit a notice updating the Court no later than ten (10) days following the completion of arbitration.

**IT IS SO ORDERED** on this \_\_\_\_ day of July, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE